894 A.2d 1221 (2006)
384 N.J. Super. 418
Edwin W. PLATT, Plaintiff-Appellant,
v.
Jane M. PLATT, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2006.
Decided April 11, 2006.
*1222 John A. Hartmann, III, argued the cause for appellant (Pellettieri, Rabstein & Altman, attorneys; Mr. Hartmann, of counsel; Nicole J. Huckerby, Princeton, on the brief).
Deborah A. Rose, Woodbridge, argued the cause for respondent.
Before Judges COBURN, LISA and S.L. REISNER.
The opinion of the court was delivered by
LISA, J.A.D.
Plaintiff, Edwin W. Platt, appeals from several aspects of a divorce judgment entered after a four-day trial and from denial of his motion for reconsideration. Plaintiff presents these arguments on appeal:
I. THE TRIAL COURT ERRED IN AWARDING DEFENDANT PERMANENT ALIMONY OF $250 PER WEEK.
A. The Trial Court Erred By Imputing Additional Income To Plaintiff For Purposes Of Determining Support.
B. The Trial Court Erred In Determining Defendant's Need For Spousal Support.
II. THE TRIAL COURT ERRED IN DETERMINING CHILD SUPPORT BY IMPUTING TO PLAINTIFF A GROSS INCOME OF $100,000 PER YEAR.
III. THE TRIAL COURT ERRED IN VALUING THE PLAINTIFF'S IRA AS OF JULY 21, 2004, THE DATE OF THE DECISION, RATHER *1223 THAN VALUING THE IRA AS OF THE COMPLAINT DATE PLUS ANY INCREASE OR DECREASE RESULTING FROM MARKET FORCES.
IV. THE TRIAL COURT ERRED IN FAILING TO AWARD PLAINTIFF COUNSEL AND EXPERT FEES.
V. THE TRIAL COURT ERRED IN DETERMINING THAT MARITAL FURNISHINGS WERE DISTRIBUTED IN ACCORDANCE WITH THE FINAL JUDGMENT.
VI. THE TRIAL COURT ERRED IN FAILING TO PROVIDE PLAINTIFF WITH AN OPPORTUNITY TO OBTAIN AN APPRAISAL OF JEWELRY AND THE FUR.
VII. IN THE EVENT THE TRIAL COURT TERMINATES PLAINTIFF'S ALIMONY OBLIGATION, PLAINTIFF'S OBLIGATION TO MAINTAIN LIFE INSURANCE MUST ALSO BE MODIFIED.
We agree in part with Point IV and modify the judgment in that respect. We agree with Point VI and remand for further proceedings regarding disposition of the jewelry and fur. We reject plaintiff's remaining arguments and in all other respects affirm. Because of this disposition, Point VII is moot and requires no further discussion. The argument raised in Point V lacks sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), and we will not discuss it further.

I
Plaintiff and defendant, Jane M. Platt, were married in 1980. Two children were born of the marriage, Derek in 1994 and Colin in 1997. The parties separated in November 2001, and plaintiff filed the divorce complaint at that time.
When the parties first married, plaintiff was employed by General Motors. In 1988, he left General Motors and started his own business, Platt's Performance Plus (PPP), an automotive repair shop, using $15,000 of marital funds. The shop, which plaintiff leases, is located at 46 Lincoln Avenue in Jamesburg. The structure has been expanded since plaintiff began the business, and it presently contains three-and-one-half bays, with a small office, storage space and waiting area. In the mid-1990s, PPP began renting additional property at 52 Lincoln Avenue, which contains one large garage that can hold seven cars.
At the time of trial in early 2004, plaintiff had three technicians working for PPP, while he served as the manager and service writer. The size of the staff varied over time, and, at its largest, included five or six employees. Plaintiff owned 70% of the stock of PPP, and defendant owned 30%. The business of PPP included repairs of ordinary cars in the three-and-one-half bay structure, and, in the large garage, where vehicles could be retained for a long period of time, repairs and restorations of luxury, vintage, and sports cars.
Defendant is a registered nurse. During the early years of the marriage she worked full-time at her profession. From 1994, when Derek was born, until 2002, defendant worked part-time as a nurse, and since 2002 has worked full-time. Her gross annual income at the time of trial was approximately $65,000.
Plaintiff's income was a major issue in dispute at the trial, as it is on appeal. Plaintiff controlled PPP, and he determined the salary he would be paid each year. PPP had its best year in 1998, realizing gross receipts of $929,666. Plaintiff paid himself a salary that year of $173,500. The gross profit that year, after deducting costs of goods sold, was $614,740. Other income was received in the amount of $9,446, for a total corporate *1224 income of $624,186 before deductions for salaries, rents, depreciation, etc. The same information for PPP for 1998 through 2002 is reflected on the following table, which also includes the percentage change of total income from year to year:

 Gross Gross Other Total
 Year Receipts Profit Income Income % Change
 1998 $929,666 $614,740 $ 9,446 $624,186
 1999 $785,423 $544,210 $12,093 $556,294 - 10.9%
 2000 $743,132 $503,721 $ 4,935 $508,656 - 8.6%
 2001 $718,183 $490,984 $ 1,075 $492,059 - 3.3%
 2002 $667,131 $497,853 $16,794 $514,655 + 4.6%

During the same time period, plaintiff decreased the salary he paid himself at a substantially disproportionate rate, as follows:

Plaintiff's
 Year W-2 Income % Change
 1998 $173,500
 1999 $145,000 -16.4%
 2000 $132,000 - 9.0%
 2001 $101,000 -23.5%
 2002 $ 62,400 -38.2%

Most significantly, for 2001, corporate profitability declined by only 3.3%, but plaintiff decreased his salary by 23.5%, and in 2002, corporate profitability rose by 4.6%, but plaintiff decreased his salary by another 38.2%. Because the case was tried in the early part of 2004, the record does not contain complete corporate financial information. However, the record does reflect that plaintiff paid himself $65,500 for 2003.
Based upon his W-2 earnings, plaintiff contends that his income and defendant's were about the same at the time of the divorce trial, and thus there was no basis upon which to award alimony to defendant.
Plaintiff explained at trial that the decline in PPP's revenues was occasioned by several circumstances. PPP lost its Ryder Truck account, which produced both rental and repair business. PPP also lost municipal work for repair of municipal vehicles owned by Monroe Township and Jamesburg as a result of changes in politics. Finally plaintiff contended that a shift in policies by auto manufacturers occurred after September 11, 2001, as a result of which zero financing deals were offered, thus inducing people to purchase new cars rather than having their old ones repaired. Also along these lines, plaintiff contended that the improved technology of newer automobiles resulted in fewer repair requirements.
But, as revenues declined, plaintiff reduced the number of PPP's employees, thus reducing expenses. And, by 2002, gross profits were on the increase. Plaintiff initiated a profit sharing plan for PPP employees, including himself, to which the corporation contributed. Although we do not have reliable corporate financial information for 2003, we know that defendant increased his salary above its 2002 level, from which it can be inferred that the positive trend was continuing.
Considering the totality of the information, the trial judge determined that the sudden drop in plaintiff's personal income, which he solely controlled through the operation of his business, and which occurred at the time of his filing of the divorce *1225 complaint, was out of step with the overall financial status of the corporation and did not constitute a true reflection of plaintiff's income. The judge took a broader view of plaintiff's historical income in recent years, recognizing that PPP continued to be an ongoing and successful business, and that its fortunes were on the upswing. The judge did not include the highest year, 1998, but averaged the next five years, from 1999 to 2003, of plaintiff's W-2 income, which equals $102,180. Rounding off, the judge determined that $100,000 represented the true measure of plaintiff's income from PPP.
In her findings in support of the denial of plaintiff's reconsideration motion, the judge made clear that her use of the term in her initial written decision "imputing" $100,000 income to plaintiff was, in effect, "`imputing' by way of averaging of historic earnings in determining what the salary or income of the plaintiff" was. The judge made these findings based upon the "testimony as a whole":
In taking a look at the historic earnings, the information provided to the Court by way of testimony at trial, as well as wage and occupational information that was available to the Court by way of the Department of Labor, the Court made a determination as to plaintiff's earnings for the purposes of calculating alimony and support. It is clear that the income dropped dramatically just after plaintiff filed the complaint for the divorce.
The Court did take a look at the published decision of Lanza v. Lanza, which is 268 N.J.Super. 603 [634 A.2d 152], as well as the unpublished case that was provided to the Court by Counsel for plaintiff. The Court does not find, particularly in this case, the Court finds the unpublished Appellate Division decision to be the distinguishable. This was not a fluctuating business where the incomes fluctuated dramatically. In this particular case, the income level of the plaintiff was pretty consistent, it didn't fluctuate dramatically, until the complaint for divorce was filed, and then the income dropped nearly in half. The Court could have taken into consideration that and thrown out the last two years of income when plaintiff's income was cut in half, but in order to be fair and equitable, the Court decided to take an approach by looking at the last five years of income which were the years that were provided to the Court by way of testimony and reflect upon the fact that the defendant is self-employed and that income information reflecting and covering a period of time, is appropriate consistent with Lanza.

Utilizing the $100,000 annual income figure for plaintiff, and in light of defendant's income, the judge awarded defendant permanent alimony of $250 per week, and, applying the Child Support Guidelines, set child support at $123 per week.

II
The main thrust of plaintiff's first two points on appeal is that the judge erred in averaging his income and fixing alimony and child support based upon $100,000 per year income. As to alimony, he further argues that the judge erred in her determination of defendant's need for spousal support. With respect to the latter contention, we note that both parties filed case information statements setting forth living expenses in excess of $5,000 per month. At trial, defendant acknowledged that her expenses decreased somewhat because she had recently moved out of the marital home into a smaller and less expensive two-bedroom townhouse. Notwithstanding that information, the judge estimated that each party had approximately *1226 equal living expenses. The findings of a trial judge are entitled to great deference and will be overturned only if "we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). Applying this standard, we have no occasion to interfere with the judge's finding about the relative needs of the parties.
We turn now to the judge's determination that plaintiff's annual income should be deemed $100,000. Plaintiff argues vigorously that the judge clearly erred as a matter of law by "imputing" income to him in the absence of a finding that he was not intentionally unemployed or underemployed. See Dorfman v. Dorfman, 315 N.J.Super. 511, 516, 719 A.2d 178 (App. Div.1998). Indeed, the trial judge made no such finding, nor would such a finding be supported by the record. Plaintiff continued working full-time at his long-established business, and there is nothing to indicate that he did not continue to devote his best efforts and energies to the business. As we have stated, however, the rationale underlying the judge's determination of plaintiff's income did not rest upon intentional unemployment or underemployment. Thus, the use of the term "impute" was not used in the sense it is used in Dorfman and other similar cases relied upon by plaintiff. As the judge stated in her reconsideration decision, she was using that term in this case to signify an averaging of plaintiff's historical income where there were significant fluctuations.
On this score, plaintiff argues that income averaging is only applicable where, from year to year the individual's income is sporadic, as demonstrated by peaks and valleys. He relies upon Lanza v. Lanza, 268 N.J.Super. 603, 634 A.2d 152 (Ch.Div. 1993). The Chancery Division, after commenting upon several opinions from other jurisdictions, concluded that "[i]n appropriate cases, ... income averaging should be favorably considered in determining proper support levels." Id. at 607, 634 A.2d 152. The out-of-state cases approved averaging of three to five years income, particularly where an individual is self-employed with income fluctuating from year to year. Nothing in those cases required peaks and valleys, as argued by plaintiff.
In the circumstances of this case, we find it completely logical and reasonable to average plaintiff's income over a five-year period. This included the most recent two years, after the divorce complaint was filed, when he chose to drastically reduce his personal income from the corporation he controlled, even though the corporation was doing well financially and recovering from the circumstances that several years earlier had caused it to experience declines in revenues. We are mindful that averaging is normally done, in appropriate cases, over a three-year period. See Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-B to R. 5:6A at 2327-28 (2006). Indeed, as an alternative position in the trial court, plaintiff urged averaging only the three most recent years. The circumstances here justified deviation from the guidelines to a more expansive and representative timeframe.
We find no abuse of discretion in the judge's analysis and conclusion and we are satisfied that her finding is supported by the record as a whole. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., supra, 65 N.J. at 484, 323 A.2d 495. Therefore, we will not disturb the alimony and child support awards based upon plaintiff's annual income of $100,000 at the time those awards were set in 2004. Of *1227 course, either party has the right to seek a future modification based upon a substantial change in circumstances. Lepis v. Lepis, 83 N.J. 139, 152-53, 416 A.2d 45 (1980).

III
Plaintiff argues that the trial judge erred in valuing his IRA as of July 21, 2004, the date of the decision, rather than as of the date the complaint was filed in 2001, plus any increase or decrease resulting from market forces. Passive assets, the value of which fluctuate after the filing of the complaint by virtue of market forces, should be valued as of the date of trial or distribution, not the date of the filing of the divorce complaint. Scavone v. Scavone, 243 N.J.Super. 134, 137, 578 A.2d 1230 (App.Div.1990).
Plaintiff contends that he made contributions to his IRA between the filing of the divorce complaint and trial. However, his contention is unsupported by the record, and he concedes that he produced no evidence of any such contributions at trial. Therefore, the judge correctly valued the asset as of the date of distribution.

IV
The trial judge appointed an accounting firm to conduct an evaluation of PPP. The court-appointed expert was to be independent and neutral. Plaintiff was initially ordered to pay a retainer of $2,500 to the expert. Later in the proceedings, by order of October 24, 2003, plaintiff was ordered to pay the outstanding balance then due to the expert, which was $5,750. Thus, plaintiff paid a total of $8,250 to the expert. Up to that point, defendant was ordered to pay no portion of the expert's fees.
At trial, plaintiff produced evidence that defendant's attorney engaged in ex parte communications with the court-appointed expert and influenced or attempted to influence the expert's conclusions and opinions. On December 30, 2003, defendant's attorney sent a letter to the court-appointed expert, which stated:
Please let me know if Mr. Platt has paid the balance of your retainer fee so that a final report may issue in time for Trial.
In addition, I am enclosing the report prepared by [another accounting firm] on Mr. Platt's behalf. At Trial, it will be necessary for you to dispute the differences in valuation with our aim to get the higher valuation to benefit my client, Jane Platt.
I will need to meet with you prior to Trial to discuss testimony regarding valuation and your opinion regarding Mr. Platt's alleged decrease in income starting in the year of the divorce complaint.
Defendant's attorney and the court-appointed expert stipulated at trial that they had a three-hour conference that did not include plaintiff or his representative. Because of the perceived bias of the court-appointed expert, plaintiff hired an expert of his own, at a cost which he contends was $5,456.
In her written decision following the trial, the judge did not award counsel fees to either party, concluding that both parties came before the court in good faith and that each had limited financial resources. However, with respect to the fees of the court-appointed expert, the judge said this:
As to outstanding money, if any, owed to the Court-appointed business evaluator, defendant shall bear the cost exclusively. It was clear from the trial testimony that defendant's counsel had numerous conversations and/or communications with the "joint" expert that did not include plaintiff's counsel. Thus, *1228 any money due and owing to [the court-appointed expert] shall be paid by defendant.
Although we find no record reference, plaintiff contends in his appellate brief that at the time of the judge's decision a balance of about $1,000 was due to the expert. Presumably, defendant paid it. Plaintiff argues that because of the bad faith exhibited by defendant's counsel in meeting and communicating surreptitiously with the court-appointed expert and, in effect, converting him to a defense expert, plaintiff should be reimbursed the $8,250 he paid to the court-appointed expert as well as the $5,456 paid to the expert he was required to hire to rebut the other expert.
The good faith of a party and the extent of fees incurred by both parties are factors to be considered in determining the allocation of fees between parties in matrimonial actions. R. 5:3-5(c). See also Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). Our review of a trial judge's determination is guided by the abuse of discretion standard. Martindell v. Martindell, 21 N.J. 341, 356, 122 A.2d 352 (1956).
The trial judge acknowledged the impropriety of the ex parte communications and ordered defendant to pay any balance due. Implicitly, the judge made a finding of bad faith on this issue, which impelled her to order defendant to pay any outstanding balance. There was bad faith, and considering the total amount of the court-appointed expert's fee and the fees incurred by plaintiff to obtain his own expert in rebuttal, we conclude that the trial judge mistakenly exercised her discretion by not ordering defendant to pay a greater portion of the court-appointed expert's fee. We find it unnecessary to order a remand on this issue. Based upon the record before us, we conclude, in the exercise of our original jurisdiction, see R. 2:10-5, that defendant should pay an additional $4,000 towards the court-appointed expert's fee. We order that defendant reimburse plaintiff in that amount. If the parties cannot resolve the terms of reimbursement, they may apply to the trial court for relief. We find no mistaken exercise of discretion in not ordering defendant to pay any portion of the fee incurred by plaintiff in hiring his own expert.

V
As part of the equitable distribution award, the judge provided in her written decision of July 21, 2004 that "the parties shall sell the jewelry and fur to an independent third party within 45 days of the date of this opinion.... The net proceeds from such sale shall be divided equally between the parties." The amended final judgment of divorce, dated September 13, 2004 set a deadline for the sale of October 15, 2004, and provided that defendant shall obtain an offer for the items from an independent third-party and transmit the offered amount to plaintiff's attorney. If deemed acceptable, the items would be sold. If not, plaintiff would have fifteen days after receiving the offer to attempt to obtain a higher offer from a different third-party.
Defendant obtained an offer, but did not transmit it to plaintiff until October 14, 2004. On October 20, 2004, defendant filed a certification in support of her motion to direct the sale of the jewelry and fur in accordance with the estimate, contending that plaintiff had not responded to the estimate provided. On October 28, 2004, plaintiff filed a reply certification seeking denial of defendant's request to sell the jewelry and fur in accordance with her offer because he did not yet have time to obtain an offer of his own. This reply was within fifteen days of plaintiff's receipt of defendant's offer.
When the matter came before the judge on November 5, 2004 as part of the parties' *1229 cross-motions for reconsideration, the judge determined that plaintiff's counsel "failed to reject the estimate provided by defendant regarding the sale of fur and jewelry subject to equitable distribution in accordance with the time periods established in paragraph 11 of the amended final judgment of divorce." We do not agree with this conclusion. Plaintiff rejected the offer within the fifteen-day period by virtue of his October 29, 2004 certification. Under the circumstances, plaintiff was not afforded a reasonable opportunity to obtain a second offer.
At oral argument, it was represented that defendant still possesses the jewelry and fur, and there would be no objection to a remand to finalize this aspect of the equitable distribution process. If the parties can amicably conclude this matter and dispose of the fur and jewelry in accordance with the established framework and then divide the proceeds without the need for further court proceedings, they should do so. If they cannot, the issue is remanded to the trial court for such further proceedings as may be appropriate.
Affirmed in part; modified in part; remanded in part.