**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5607-16T1

STEPHANIE MESSNER,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

MIKLOS HAJDU-NEMETH,

       Defendant-Respondent/
       Cross-Appellant.

_____

       Submitted January 28, 2019 – Decided February 20, 2019

       Before Judges Fasciale and Rose.

       On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FD-18-0340-01.

       Jared A. Geist, attorney for appellant/cross-respondent.

       George G. Gussis, attorney for respondent/cross-appellant.

PER CURIAM

In this child custody dispute, plaintiff, the mother, appeals from a judgment dated July 25, 2017, modifying custody and granting defendant, the father, primary residential custody. The judge entered the judgment after concluding a nine-day plenary hearing. Defendant cross-appeals from that part of the judgment denying his request for counsel and expert's fees. We affirm substantially for the thoughtful and extensive reasons expressed by the judge, and add the following remarks.

The parties cohabitated as non-marital partners since July 1999. During the course of their relationship, they had two daughters, born in September 2000 and November 2004. At some point after the children were born, the parties stopped cohabitating, but continued to reside in Somerset County. On October 20, 2008, the parties entered a consent order (the October 2008 consent order), which addressed custody and parenting time. The October 2008 consent order granted the parties joint legal custody, and designated plaintiff as the parent of primary residence and defendant the parent of alternate residence. Among other things, the consent order also addressed defendant's parenting time, including on holidays. The parties agreed to grant the right of first refusal if the other was unavailable for parenting time.

A-5607-16T1

In April 2015, plaintiff moved from Somerset County to Union County, and in July 2015, she filed an application for a change in venue. As part of that application, plaintiff sought to modify the September 2007 order and October 2008 consent order by seeking an increase in child support and a modification of custody because of her move.

In August 2015, defendant cross-moved for custody and requested that child support be recalculated. The motion judge held a hearing on August 19, 2015 (the initial hearing). Following oral argument, the motion judge found changed circumstances – plaintiff's move and the children's maturation – and denied plaintiff's application to change venue to Union County. The motion judge ordered the parties to engage in mediation, and ultimately if mediation was unsuccessful, to appear at a plenary hearing. Mediation was unsuccessful and in December 2015 a plenary hearing was scheduled.

The plenary hearing began on August 17, 2016. However, on August 23, 2016, plaintiff filed an order to show cause (OTSC) to compel defendant to return the children to her because the children, at that time, began residing with defendant and refused to return to plaintiff. The judge denied the OTSC and noted that the matter was in the midst of trial and the facts were "hotly contested." The judge also noted that the court was not in a position to compel

defendant to comply with the October 2008 consent order without finding that defendant had alienated the children – which was the subject of the plenary hearing. Plaintiff filed another OTSC, which the judge denied. On September 27, 2017, the judge ordered that the parenting time in the October 2008 consent order remain in effect; but, the judge also stated that if the children did not want to go with plaintiff, he would not issue an order "that requires any physical action to take place to shove children into a car to see their mom."

The plenary hearing continued and took place another eight days between September 2016 and June 2017. On July 25, 2017, the judge rendered his comprehensive oral decision. He also issued a four-page order, resolving the issues of custody, parenting time, child support, and counsel fees. The judge designated defendant the parent of primary residence and designated plaintiff the parent of alternate residence. He outlined plaintiff's parenting time and kept most of the October 2008 consent order still in effect.

On appeal, plaintiff contends that the motion judge erred by proceeding at the initial hearing without affording her a reasonable opportunity to obtain counsel. Plaintiff asserts that the judge "severely prejudiced" her case by proceeding with the hearing.

Plaintiff asserts that the court should have provided her with counsel because the dispute amounted to a "consequence of magnitude." To support this contention, plaintiff cites our decision in Crist v. New Jersey Division of Youth & Family Services, 135 N.J. Super. 573, 575 (App. Div. 1975), in which we concluded that counsel should be assigned to "indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent termination of their parental rights." (Emphasis added). Plaintiff also cites to our Supreme Court's decision in Rodriguez v. Rosenblatt, 58 N.J. 281 (1971), where the Court concluded that indigent defendants charged in municipal court proceedings with disorderly person offenses were entitled to have counsel assigned to them. There, the Court reasoned that "as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." Id. at 295.

Plaintiff's reliance on these cases is misplaced. Plaintiff was not facing temporary loss of custody or permanent termination of her parental rights. She was facing losing her designation as the parent of primary residence. She would still have visitation with the children, and she would continue to have joint legal

5

custody. Thus, this is not a "consequence of magnitude" as contemplated in Crist or Rodriguez. Additionally, throughout these proceedings, plaintiff never claimed indigency. And furthermore, we have recognized that a matrimonial litigant does not enjoy a constitutional right to counsel equal to that of a criminal defendant. See In re Estate of Schifftner, 385 N.J. Super. 37, 44-45 (App. Div. 2006) (stating that generally there is no constitutional right to counsel in civil cases).

Plaintiff also contends that the motion judge erred by finding a change in circumstances to warrant a plenary hearing. Plaintiff asserts that the "only real changed circumstance was self-created" by defendant when he "violated the [c]ourt orders regarding custody and parenting time."

"In Lepis v. Lepis, 83 N.J. 139[, 157] (1980), the Supreme Court set forth 'the proper procedure for courts to follow on modifications motions.'" R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). In Lepis, the Court outlined a two-step process when considering modification motions: (1) "the movant must meet the threshold standard of changed circumstances"; and (2) after the movant makes the prima facie showing, a hearing or trial should be conducted using the same standard that applies at the time of a divorce – the best interests of the child. Ibid. This two-step process applies to changes in child custody. Ibid.

"A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017).

The motion judge did not abuse his discretion in finding that there was a change in circumstances. Plaintiff's move and the children's maturation are changes in circumstances. Moreover, at the time of the hearing, it had been seven years since the parties entered into the consent order. In fact, plaintiff herself acknowledged that the October 2008 consent order was "outdated" and may have to be modified. In support of her motion to change venue after she moved to Union County, she explained to the motion judge, "I knew that there could be a possibility that I would have to change or modify the original custody order of 2008, which extended Sunday nights into Monday. That document is outdated . . . ."

Plaintiff argues that the changed circumstance was defendant's "violation" of the October 2008 consent order (the violation being the children living with him). But that cannot be the case. First, the hearing was in August 2015, and the children did not start living with defendant until August 2016. Therefore,

the purported "violation" of the October 2008 consent order could not have been the changed circumstance on which the judge relied. Second, the judge expressly noted that the changed circumstances were plaintiff's move, the children getting older, and the time between the October 2008 consent order and the time of the hearing, August 2015.

Plaintiff also argues that the judge at the plenary hearing did not consider her expert's testimony and recommendations "at all." Such a contention is belied by the record – the judge considered both experts' testimony and discussed parental alienation in detail. The judge determined that plaintiff's expert testified credibly, but he rejected some of his conclusions. For example, the judge stated, "plaintiff's expert . . . concluded, as does the court, that both parties have difficulty in communicating." The record also demonstrates that the judge properly considered parental alienation. He stated, "[t]he fundamental and, perhaps, pivotal issue here is whether there is alienation as . . . plaintiff claims or estrangement as . . . defendant claims." The judge added that plaintiff's expert "gave an elegant explanation of the characteristics of alienation, listing several understandable criteria." After the judge explained each characteristic, he made specific findings of fact as to each and every factor of parental alienation. We decline to disturb the judge's findings as to parental alienation. See N.J. Div. of

Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (stating that factual findings of the trial judge are generally accorded deference given the judge's "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [the judge] has a 'feel of the case' that can never be realized by a review of the cold record").

Next, plaintiff argues for the first time that the judge improperly "expanded" the right of first refusal to include defendant's wife, i.e., the children's step-mother, and in doing so, granted defendant's wife superior rights over plaintiff's rights. The right of first refusal intends to give one parent the opportunity to care for the children in the event that the parent cannot be with the child during his or her parenting time. See Bisbing, 230 N.J. at 314 (stating that the parents granted one another "a right of first refusal if one parent were unable to care for the children during parenting time reserved for that parent"). Here, the parties originally granted each other this right, which was outlined in the October 2008 consent order: "If either party is unavailable to exercise his/her parenting time with the [c]hildren, the other party has the right of first refusal for child care." In his oral decision, the judge explained:

> Again, the parties had dispute about what the right of first refusal meant. [T]heir consent order was before the advent of [plaintiff's fiancé] . . . and . . . it may likely be that it was also [before] the advent of

9

[defendant's] wife. And so it was – it became an issue because when a parent – a biological parent wasn't available to take the children, the other parent insisted on the right of first refusal, which was a bit impractical if the children were comfortable remaining with either a step-parent or a party's partner – fiancé.

So the court has allowed that to happen hereby clarifying the right of first refusal such that if the children are comfortable remaining with . . . defendant's wife, even though . . . defendant is not around, the right of first refusal doesn't kick in and vice versa for plaintiff's fiancé.

The judge clarified the right of refusal to be in conformity with how the parties were already acting. He was not granting third parties superior rights over a biological parent, but rather, he was thinking practically – if the children were comfortable staying with defendant's wife or plaintiff's fiancé, then the children could stay with that person during that parent's parenting time, instead of having to go to the other parent's house. Plaintiff fails to acknowledge that the judge not only "expanded" the right to defendant's wife, but also to her fiancé. We see no error, let alone plain error – that is, an error "clearly capable of producing an unjust result." R. 2:10-2.

Plaintiff further contends that the judge erred in awarding defendant retroactive child support, from August 17, 2016, the day the children began living with him. Plaintiff cites N.J.S.A. 2A:17-56.23a which states:

10

No payment or installment of an order for child support, or those portions of an order which are allocated for child support established prior to or subsequent to the effective date of P.L.1993, c.45 ([N.J.S.A.] 2A:17-56.23a), shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

Plaintiff attempts to argue that the modification was improper because there was never a change in circumstance in the first place. But the motion judge properly found there was a change in circumstances warranting a hearing. Moreover, that is not what the statue says. The issue is the date on which the child support obligation may be retroactively modified, which the statute clearly states can only be from the date the notice of motion seeking modification was filed. The judge terminated defendant's support obligation effective August 17, 2016, the date that the children stopped residing with plaintiff. He did not retroactively modify it back to August 4, 2015, the date that defendant filed his cross motion for primary residential custody and a recalculation of child support. Therefore, the judge's decision benefited plaintiff – he did not retroactively modify the support in 2015, but rather a year later in 2016. We see no abuse of discretion.

Lastly, plaintiff contends that the judge failed to properly apply the child custody factors set forth in N.J.S.A. 9:2-4. Plaintiff argues that defendant was violating a court order and that the judge did not take this into consideration. This is clearly contradicted by the record. The judge understood that there was the October 2008 consent order that gave plaintiff primary residential custody. The judge confirmed that the October 2008 consent order would remain in place during the pendency of the hearing, but at the same time, he would not order the children be physically taken to see their mother, absent a showing that defendant was interfering. The judge stated, "[s]o unless I have objective evidence . . . . Unless I have video, audio or a police report showing [defendant] blocking them from going into their mom's car, do not expect an order from me that requires any physical action to take place to shove children into a car to see their mom." Moreover, in his oral opinion, the judge stated, "again, the court has found no violation by . . . defendant but instead found a true change in circumstances with the children having, by virtue of their maturation and by virtue of their interactions with . . . plaintiff, gravitated into . . . defendant's gravitational field."

Plaintiff's conclusory assertions that the judge did not properly apply each custody factor pursuant to N.J.S.A. 9:2-4, but instead only "read through" them, is also clearly contradicted by the record. The judge meticulously addressed

12

each factor, first explaining what the factor is and then, making findings of facts, setting forth examples, and finding which party the factor weighed in favor of. In light of our deferential review, we will not disturb those findings, which are supported by substantial and credible evidence. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).

As to defendant's cross-appeal, we likewise affirm substantially for the reasons expressed by the judge and add the following brief comments. A Family Part judge may award attorney's fees at his discretion subject to the provisions of Rule 4:42-9. A judge "shall consider the factors set forth in [Rule 5:3-5(c)], the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23. Application of these factors and the decision to award fees is within the trial judge's discretion. Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008). Moreover, "fee determinations by trial [judges] will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Pursuant to Rule 5:3-5(c), a judge shall consider the following factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions

advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

As to expert fees, a Family Part judge's discretion to "direct who shall pay the cost of [an expert] examination, appraisal, or report" is found in Rule 5:3-3(i). In doing so, the judge should consider the same factors outlined in Rule 5:3-5(c). See Platt v. Platt, 384 N.J. Super. 418, 429 (App. Div. 2006) (citing Rule 5:3-5(c) in the context of allocating expert fees in an action for divorce).

Defendant maintains that the judge erred by refusing to impute income of $79,400 to plaintiff as requested by defendant and "summarily" dismissing defendant's request for reimbursement of expert fees.

The judge declined to impute income based on the child support guidelines. The judge considered and reviewed each of the nine factors in Rule 5:3-5(c). Factor one – the financial circumstances of the parties – was not dispositive. Factor one was the only factor weighing in plaintiff's favor. The judge found that the majority of the factors favored neither party. Even if the judge's reasoning was erroneous – as to using the child support guidelines for

14

imputation of income – it was not "clearly capable of producing an unjust result," and therefore, does not warrant reversal. R. 2:10-2.

As with the custody factors, the judge meticulously went through each factor pursuant to Rule 5:3-5(c), and made findings of fact. After considering each factor and denying the parties' requests for attorney's fees, the judge also denied defendant's request for expert's fees. Although the judge did not explicitly consider each factor in the context of expert's fees, fees are discretionary with the court in the first instance. The judge clearly considered each factor of Rule 5:3-5 which is considered for both attorney's fees and expert's fees. Consequently, we see no abuse of discretion.

Plaintiff's arguments raised for the first time in her reply brief are deemed waived. See Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011). Nevertheless, we thoroughly reviewed all of the parties' arguments on appeal and conclude that to the extent the parties' arguments are not addressed, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5607-16T1