**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1428-18T4

JOSEPH J. GORMLEY, III,

     Plaintiff-Respondent,

v.

SUSAN CANNAVO
GORMLEY,

     Defendant-Appellant.

_____

     Submitted September 16, 2019 – Decided December 26, 2019

     Before Judges Rothstadt, Moynihan, and Mitterhoff.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1232-15.

     Capehart & Scatchard, PA, attorneys for appellant (Amy Charna Goldstein and Linda M. Payne, on the briefs).

     Joseph J. Gormley, III, respondent pro se.

PER CURIAM

Defendant Susan Cannavo Gormley appeals from portions of the Family Part's June 28, 2018 final judgment of divorce (FJOD) that fixed the amount of alimony and child support to be paid by plaintiff Joseph J. Gormley, and further directed that defendant pay the parties' daughter's unreimbursed medical expenses.  Defendant also appeals from the trial judge's November 9, 2018 order denying her motion for reconsideration.  On appeal, defendant argues the Family Part judge "erred in calculating alimony and child support by imputing income to [her] and by failing to impute income to . . . plaintiff."  She contends the judge failed to consider defendant's "need for spousal support," and abused her discretion by deviating from the Child Support Guidelines.  See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2019).

Having considered defendant's arguments in light of the record and the applicable principles of law, we conclude the judge improperly imputed income to defendant and not to plaintiff, did not explain her findings as to defendant's need for support or plaintiff's ability to pay, and incorrectly deviated from the Guidelines.  For those reasons, we vacate the award of alimony and child support, and remand the matter to the trial judge for reconsideration.

A-1428-18T4

I.

The salient facts as developed at the parties' trial are generally undisputed. They are summarized as follows. The parties were married in 2000, had one child in 2004, and in 2012 the parties separated when defendant and the child moved in with defendant's parents. Plaintiff filed for divorce in 2015.

At the time the parties were married, defendant already suffered from Multiple Sclerosis (MS). In 2002, the Social Security Administration (SSA) had determined that she was disabled. For that reason, defendant was unemployed. At the time of the trial, plaintiff had been employed full-time since 2013 in a commission-based job and earned approximately $150,000 annually during the two years before the trial. However, his paystub for approximately five months of 2018 reflected that his earnings were $46,644.56 or $112,000 on an annualized basis. However, by the time the matter was tried, plaintiff decided to reduce his hours to begin studying psychology and researching parental alienation. He also reduced his hours at work to prepare for trial in this matter. Nevertheless, plaintiff contended that his reduced income was based upon his employer's new commission formula.

A-1428-18T4

At the thirteen-day trial, the only expert to testify addressed custody and parenting time issues relating to the parties' daughter not having contact with plaintiff. The other witnesses included the parties and several fact witnesses.

After the lengthy trial, the Family Part judge granted defendant sole legal custody of the daughter and barred any "parenting time for plaintiff until further order of the court." As to support, the judge rejected defendant's monthly budget of approximately $7700 and reduced it to $4300. According to the judge, many of the defendant's expenses were fictional and her budget did not reflect the assistance defendant was receiving from her parents while separated from plaintiff. The judge concluded that "[l]ooking at [defendant's] budget and attempting to make it realistic in the face of the [$7700] per month, I find that a reasonable monthly budget is $4300."

After imputing income to defendant in the amount of $240 per week, the judge ordered plaintiff to pay $200 in alimony weekly, deviated from the Guidelines by ordering $90 per week for child support, and required plaintiff to maintain medical insurance through his employer, with defendant paying all unreimbursed medical expenses.

Defendant filed a motion for reconsideration, arguing that the judge erred in her calculation of support to be paid by plaintiff when she imputed income to

A-1428-18T4

defendant and failed to impute income to plaintiff. Defendant also claimed the judge failed to calculate child support and unreimbursed health expenses according to the Guidelines.

In response to defendant's motion, the judge recognized that she did not give any reasons for deviating from the Guidelines and in an oral decision clarified that she found good cause, pursuant to Rule 5:6A, to deviate. The judge reasoned an injustice would occur if plaintiff was required to pay child support pursuant to the Guidelines because he "is not going to see his child," and the parents and the child "contributed equally" in the circumstances that led to granting sole custody to defendant and denying plaintiff any parenting time. The judge denied defendant's motion to reconsider her calculation of child support and alimony. This appeal followed.

## II.

Our review of Family Part orders is limited. We accord deference to Family Part judges due to their "special jurisdiction and expertise in family [law] matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Therefore, their findings are binding on appeal so long as their determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. Evidence derived from

testimony is given great deference since the trial judge is better suited to evaluate the credibility of the witnesses.  Id. at 412.

Only when the trial judge's findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice" is reversal warranted.  Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).  "This standard applies equally to the trial court's decisions regarding alimony [and] child support . . . ." Lombardi v. Lombardi, 447 N.J. Super. 26, 33 (App. Div. 2016) (citations omitted).

However, a "judge's legal conclusions, and the application of those conclusions to the facts, are subject to [this court's] plenary review." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).  "[A]ll legal issues are reviewed de novo."  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

A-1428-18T4

III.

A.

We first address the trial judge's imputation of income to defendant and not to plaintiff in her calculation of alimony and child support. At the outset, we agree with defendant that the trial judge mistakenly exercised her discretion by imputing income to defendant. See Sternesky v. Salcie-Sternesky, 396 N.J. Super. 290, 307-08 (App. Div. 2007) ("Imputation of income is left to the sound discretion of the trial judge based on the evidence presented.").

In reaching her decision, the judge found that defendant receives $2023 monthly from social security because she is disabled due to her MS. Nevertheless, the judge imputed income to defendant because the judge found "no medical testimony to that effect was presented." The judge recounted the symptoms defendant testified she suffered from, which included fatigue, bladder issues, tremors, and trouble with concentration. The judge observed that "[n]one of those symptoms were on display in the courtroom during the [thirteen] days of trial." According to the judge, defendant's behavior during trial did not support "her claim of her deficiencies and difficulties such that they would prevent her from being employed." Furthermore, the judge found defendant's unemployment was voluntary because "there [was] no evidence that she was

7

ever told by any medical professional that she should" not work. The judge determined defendant was not fully disabled through defendant's testimony that she drives her daughter to various locations. The judge concluded defendant did not demonstrate "the sedentary lifestyle of a disabled person," and therefore was capable of working at least twenty hours per week. However, "[b]ecause [defendant had] been out of the work force for many years, [defendant] would probably start at a lower end of the wage scale." For that reason, the judge imputed $12 per hour or $240 per week.

The judge later reiterated her ruling in her oral decision rejecting defendant's motion for reconsideration. There the judge explained she did not contest the defendant's disability, but that under the holding in Gilligan v. Gilligan, 428 N.J. Super. 69 (Ch. Div. 2012), a trial court's opinion, an award of social security disability alone was not sufficient to establish defendant's inability to work.

We conclude that the trial judge misapplied the controlling law. We agree that "[i]ncome may be imputed to a party who is voluntarily unemployed or underemployed" if the party's actions are "intentional . . . without just cause," and that the "party asserting inability to work due to disability bears the burden of proving the disability." Golian v. Golian, 344 N.J. Super. 337, 341 (App.

Div. 2001). However, when SSA has determined that a party is disabled, a presumption of disability is established. Id. at 341-42. When a party has been adjudicated disabled by the SSA, that determination "constitutes a prima facie showing that [a party] is disabled, and therefore unable to be gainfully employed, and the burden shifts to [the opposing party] to refute that presumption." Id. at 342-43; see also 42 U.S.C. § 423(d)(1)(A) and (2)(A); [1] Diehl v. Diehl, 389 N.J. Super. 443, 451 (App. Div. 2006) ("The determination of [a litigant's] disability is prima facie evidence of [an] inability to pursue gainful employment.").

The evidence a party could present to rebut the presumption of disability could include "lay testimony, expert testimony[,] or medical records, consistent with the Rules of Evidence, as the trial court deems appropriate." Golian, 344 N.J. Super at 343. If the opposing party can rebut the presumption of disability,

---

[1] Disability is defined by the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under 42 U.S.C. § 423(d)(2)(A), "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

the trial court may then impute income to the party receiving disability benefits. Id. at 341-43.

The trial judge's reliance in this case on Gilligan was clearly in error. In Gilligan, a trial court stated, contrary to the shifting burden of proof we established in Golian, the SSA's declaration that a party was disabled was insufficient to enable that party to establish a prima facie case of disability. Gilligan, 428 N.J. Super. at 80-81. The court held even though a party had been adjudicated as disabled, that party was still required to provide more evidence to the court "than simply the SSD award letter itself to prove his or her case." Id. at 73. However, as we specifically stated in Golian, a party's "SSA disability status . . . result[s] in a presumption of inability to work and the burden should be on [the opposing party] to rebut that presumption before income can be imputed to" the party receiving SSD benefits. 344 N.J. Super. at 338-39. To the extent the trial court's decision in Gilligan is inconsistent with our ruling in Golian, we disapprove of it.

Here, it was undisputed that SSA determined defendant was disabled. Plaintiff, who had defendant examined and interviewed by his experts during discovery, failed to adduce any evidence at trial to rebut the presumption of defendant's disability. Under these circumstances, it was an error for the trial

judge to have looked to defendant for other evidence that she was disabled or to base her findings about defendant's disability on her observations of defendant during the trial as the presumption of disability was never rebutted.

B.

Turning to defendant's contention about the trial judge's failure to impute income to plaintiff, here too we disagree with the trial judge. The judge determined after the 2018 trial that "[i]n 2017, . . . plaintiff had a gross income of $150,000," and in 2018 "plaintiff [was] employed and . . . will have an annual income of approximately $100,000 . . . based on the year-to-date pay stubs submitted." The judge noted that "because [plaintiff] works on commissions, it could go up more than that." Rather than relying upon his last few year's income, the judge considered the family's income during the six years prior to the parties' separation in 2012, and determined "the family earned a gross income not much more than $92,000," after apparently attempting to average plaintiff's gross income over those six years.[2] The judge never addressed defendant's contention that plaintiff was intentionally underemployed.

On appeal, defendant maintains plaintiff has the ability to earn up to $150,000. She asserts that plaintiff has not been earning as much because he

---

[2] Our calculation of that average is closer to $88,000 than $92,000.

admitted to working less and diverting his efforts to studying psychology, researching parental alienation, and representing himself during this trial and related litigation. Defendant relies on our opinions in Elrom v. Elrom, 439 N.J. Super. 424 (App. Div. 2015), and Platt v. Platt, 384 N.J. Super. 418 (App. Div. 2006), to argue the judge should have averaged plaintiff's earnings of those two years prior to trial and imputed additional income to him.

Plaintiff asserts that it was only during the two years prior to trial that he was able to earn the significant income as argued by defendant. Plaintiff also contends that a change in the commission rate at his employment, which he testified to at trial, warranted a finding that he is not voluntarily underemployed.

We conclude that the trial judge erred by not including plaintiff's earnings during the years just prior to the trial when determining whether he was earning income commensurate with his earning capacity. Trial judges must first consider the parties marital lifestyle to determine the amount needed for support and then consider the paying spouse's earning capacity to determine that spouse's ability to pay. See Lombardi, 447 N.J. Super. at 37 ("'The importance of establishing the standard of living experienced during the marriage cannot be overstated.' It is the 'touchstone for the initial alimony award.'" (citations omitted) (quoting Crews v. Crews, 164 N.J. 11, 16 (2000))). In their

A-1428-18T4

determination of whether a party has the ability to pay support, trial judges are required to consider, as of the trial date, the "potential earning capacity of an individual, not his or her actual income."  Caplan v. Caplan, 182 N.J. 250, 268 (2005) (quoting Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999)); see also Gnall v. Gnall, 432 N.J. Super. 129, 159 (App. Div. 2013) ("Both when setting child support and in reaching a proper alimony award, a judge must examine not only each party's income, but also his or her earning ability."), rev'd on other grounds, 222 N.J. 414 (2015).

When there are substantial variations in the income of a party, it is not unreasonable for a trial court to use income averaging when determining a party's ability to pay alimony, which must include the years after a complaint is filed and before a divorce is finalized.  See Platt, 384 N.J. Super. at 426 (noting that it was logical and reasonable to average defendant's income over a five-year period for purposes of calculating alimony and child support where husband was self-employed and "chose to drastically reduce his personal income").  However, a trial court errs when it fails to consider actual income leading up to the trial when determining whether a party has the ability to pay support.  See Lynn v. Lynn, 165 N.J. Super. 328, 341 (App. Div. 1979) (explaining that a party's

"earning capacity or prospective earnings" should also be considered in addition to the party's current income).

If a court is satisfied that a party is not earning at his or her capacity it then can impute income if, as already noted, it finds voluntary underemployment without just cause. Golian, 344 N.J. Super. at 341. "Inherent in a finding of 'underemployment' is the notion the obligor is intentionally failing to earn that which he or she is capable of earning." Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998).

"Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). "In making that decision, the court should consider the employment status and earning capacity of [the party] had the family remained intact [and] the reason for and intent behind the voluntary underemployment or unemployment." Caplan, 182 N.J. at 268; see also Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 12(a), www.gannlaw.com (2019).

Here, the trial judge did not assess plaintiff's earning capacity or his current earnings in her determination of plaintiff's ability to pay support.

A-1428-18T4

Inexplicably, the judge ignored plaintiff's current earnings and relied upon six years of income that plaintiff earned prior to the parties separating, which was more than five years before the trial date. Again, under these circumstances, we are constrained to remand the issue of support for the trial judge's reconsideration.

IV.

Next, we address the trial judge's determination of the amount of support needed by defendant. At trial, defendant testified to her Case Information Statement's budget and to the assistance she received from her parents while living with them. In her decision, the trial judge found "[t]he parties lived an average lifestyle. An average, comfortable lifestyle. Not the upper middle-class lifestyle claim[ed] by . . . defendant." She addressed defendant's budget and characterized it as "a work of fiction" and identified expenses she found excessive. In addition, the judge compared the expenses to plaintiff's earnings while the parties lived together six years earlier and concluded that "[i]f . . . defendant was actually spending [$7700] a month during those years, it is no wonder that the family had financial difficulties." The judge then reduced defendant's budget to $4300 per month, without any explanation as to how she calculated that amount.

A-1428-18T4

As noted, we review a trial judge's support determinations for an abuse of discretion. In order to perform our review, we must be provided with adequate reasons for the trial judge's determinations. "Rule 1:7-4 requires a judge to provide findings of fact and conclusions of law on every [decision] decided by a written order that is appealable by right. . . . The omission of critical factual findings, . . . impedes our review and requires a remand limited to this issue." Elrom, 439 N.J. Super. at 443 (first alteration in original) (citations omitted). When a trial judge issues reasons for a decision, it "must state clearly [her] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (second, third, and fourth alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)).

On the record before us, we are again constrained to remand the matter for an explanation as to how the trial judge determined defendant's needs were to be fixed at $4300 per month as the judge failed to provide us with any calculations supporting her determination.

A-1428-18T4

V.

Last, we consider the trial judge's deviation from the Guidelines by ordering $90 per week for support and requiring defendant to be solely responsible for all uncovered medical expenses for the child.[3]  As noted, the judge explained on reconsideration that she deviated from the Guidelines because plaintiff was not granted any parenting time.  That reasoning was without any support.

Rule 5:6A requires a trial judge to employ the Guidelines when establishing child support unless "good cause is shown."  When deciding the amount of child support, a judge must apply the Guidelines for incomes up to $187,200, and then for higher income families, apply the statutory factors under N.J.S.A. 2A:34-23(a) to calculate an additional discretionary amount to be added if warranted.  See Pascale v. Pascale, 140 N.J. 583, 593-94 (1995); Caplan v. Caplan, 364 N.J. Super. 68, 78, 84-86 (App. Div. 2003); see also Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 20, www.gannlaw.com (2019).

---

[3] Under the Guidelines, "health care expenses in excess of $250 per year should" be divided between the parties in proportion to each parent's income.  Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 27, www.gannlaw.com (2019).

A-1428-18T4

"If a [judge] determines deviation from the guidelines is appropriate, [the judge] must nevertheless calculate the guidelines-based support award and state the specific findings justifying its deviation therefrom—specifically, why deviation is in the best interests of the child." Avelino-Catabran, 445 N.J. Super. at 594. "If the [G]uidelines are found inapplicable . . . the court should consider the factors set forth in N.J.S.A. 2A:34-23 or N.J.S.A. 9:17-53 when establishing the child support award." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 3, www.gannlaw.com (2019).

A reduction or elimination of parenting time is not good cause to deviate from the Guidelines because the Guidelines factor in the amount of time each parent spends with the child when determining the support obligations. Further, any injustice caused by the failure of a party's relationship with his or her child is not remedied by a reduction in support. The injustice must be viewed from the perspective of the child, not the supporting parent because "[i]n all cases, the decision to deviate from the [G]uidelines shall be based on the best interests of the child." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 21, www.gannlaw.com (2019); see also Pascale, 140 N.J. at 594.

The judge here did not take into consideration the best interests of the child when she reduced support below the Guidelines because there was no parenting time ordered. Contrary to the trial judge's determination, the Guidelines contemplate a non-custodial parent's support obligation being reduced if the parent spends more time than contemplated by the initial award to reflect additional costs being assumed by the non-custodial parent during the time spent with child. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at ¶ 13(d), 14, www.gannlaw.com (2019). In any event, once the judge deviated from the Guidelines, she was required to establish the Guideline amount, apply the statutory factors under N.J.S.A. 2A:34-23 or N.J.S.A. 9:17-53, and then explain her reasons for deviating in writing. That did not occur here.

Since the trial judge incorrectly reduced plaintiff's support obligation based upon his lack of any parenting time, on remand, the trial judge must recalculate child support in accordance with the Guidelines. If the judge deviates from the Guidelines, she must make specific findings in writing that support a deviation and establish support in accordance with the statutory factors.

The order denying reconsideration is reversed.  The alimony and child support ordered in the FJOD is vacated and remanded for reconsideration.

Reversed in part, vacated in part, and remanded for further proceedings consistent with our opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-1428-18T4